IRVING, J.,
for the Court.
¶ 1. A Harrison County jury convicted James O’Connell of possession of a controlled substance with intent to distribute. He was sentenced, as a habitual offender, to sixty years in the custody of the Mississippi Department of Corrections. Feeling aggrieved, O’Connell appeals his conviction, arguing that the inventory search of his vehicle violated the Fourth Amendment of the United States Constitution and the provisions of Article 3, Section 23 of the Mississippi Constitution of 1890.
¶ 2. Finding no reversible error, we affirm O’Connell’s conviction and sentence.
FACTS
¶ 3. Captain Sterling Beckham and Deputy James McMahan of the Harrison County Sheriffs Department went to O’Connell’s residence to serve a warrant for his arrest. Upon their arrival, the deputies knocked on the door but received no response from within the house. As the deputies proceeded to depart the premises, they noticed O’Connell driving past his home in a blue Chevrolet truck. They pursued O’Connell until they were able to make a traffic stop.
¶ 4. After stopping the vehicle, Deputy McMahan served O’Connell with the arrest warrant and placed him under arrest. Due to the fact that O’Connell was the only occupant of the vehicle, Deputy McMahan called for a tow truck to come and tow the vehicle. While waiting for the tow truck to arrive, Deputy McMahan performed a “vehicle inventory” and discovered a small amount of marihuana in the glove compartment of the truck and three pounds of marihuana concealed in a Ford automotive part box in the bed of the truck. Deputy McMahan placed the bags of marihuana in the front seat of his patrol car and telephoned the department’s narcotics unit, which advised him to have O’Connell’s vehicle towed to the department’s work center and to transport O’Connell there as well.
¶ 5. At the work center, O’Connell was given his Miranda rights. Afterwards, he allegedly told the deputies that the marihuana was his and had been given to him by a friend who owed him $10,000.
¶ 6. A pretrial suppression hearing was held regarding the marihuana seized from the bed of the truck. The court declined to suppress the evidence. At trial, O’Con-nell denied ever telling the deputies that the marihuana belonged to him. Deputy McMahan testified that he opened the box containing the marihuana because it is *308 standard procedure to conduct an inventory search in situations where the arres-tee’s vehicle is being towed. He also testified that in conducting such searches, it is standard procedure to open containers which may contain items of value, as the purpose of conducting the inventory search is to protect the owner’s property and to protect law enforcement officers from subsequent claims of theft or damage.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 7. O’Connell argues that the inventory search of his vehicle violated the Fourth Amendment of the United States Constitution and the provisions of Article 3, Section 23 of the Mississippi Constitution of 1890. However, he acknowledges that law enforcement officers may conduct an inventory search of a vehicle impounded following the lawful arrest of the driver, provided the search is conducted pursuant to established policies which do not grant discretion to the law enforcement officer conducting the search to determine which areas of a vehicle to search. O’Connell also acknowledges that law enforcement officers conducting a proper vehicle inventory search may open packages found inside the vehicle, provided the search procedure is not used as a ruse for rummaging through the vehicle to discover incriminating evidence. Nevertheless, according to O’Connell, the search in his case was illegal because the Harrison County Sheriffs Department did not have appropriate written policies in place regarding inventory searches. Specifically, O’Connell contends that the Harrison County Sheriffs Department lacked standardized written policies regulating officer discretion in conducting inventory searches.
¶ 8. The State’s position regarding the circumstances under which vehicle inventory searches may be performed is not contrary to O’Connell’s. However, the State and O’Connell differ on the question whether the standardized policies must be in writing and whether an officer conducting the search may utilize a reasonable degree of discretion. The State contends that an agency’s standardized policies do not have to be in writing and may be established through testimony. The State maintains that the search in this case was not a ruse to look for incriminating evidence, but was conducted in accordance with the standard policy of the Harrison County Sheriffs Department to open containers reasonably expected to contain items of value in order to protect law enforcement officers from subsequent accusations of theft or damage.
¶ 9. The Fifth Circuit Court of Appeals has extensively addressed the validity of inventory searches. In United States v. Lage, 183 F.3d 374 (5th Cir.1999), a defendant challenged his conviction on the ground that the introduction of evidence discovered during the police’s inventory search of his freightliner violated his Fourth Amendment rights. The court held:
Under the Fourth Amendment, warrant-less searches are presumptively unreasonable. There is, however, an exception to the warrant requirement when a law enforcement officer conducts an inventory of seized property if that inventory is part of a bona fide police “routine administrative caretaking function.” Under these circumstances, the Fourth Amendment requires only that an inventory not be a “ruse for general rummaging in order to discover incriminating evidence”.... Thus, an inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle’s owner, (2) protecting the *309 police against claims or disputes over lost or stolen property, and (3) protecting the police from danger.
Id. at 380 (citations omitted). “Applying the Fourth Amendment standard of ‘reasonableness,’ state courts have overwhelmingly concluded that, even if an inventory is characterized as a ‘search,’ the intrusion is constitutionally permissible.” Robinson v. State, 418 So.2d 749, 754 (Miss.1982) (citing City of St. Paul v. Myles, 298 Minn. 298, 218 N.W.2d 697, 699 (1974)).
¶ 10. In a case that is factually similar to the case at bar, the Fifth Circuit held that “an inventory search is valid, provided it is conducted under an established police department inventory policy.” United States v. Como, 53 F.3d 87, 91 (5th Cir.1995) (quoting United States v. Seals, 987 F.2d 1102, 1107 (5th Cir.1993)). The court further held:
When the police acquire temporary custody of a vehicle, a warrantless search of the vehicle does not offend Fourth Amendment principles so long as the search is made pursuant to “standard police procedure's” and for the purpose of “protecting the car and its content” .... Police may lawfully conduct such searches while the vehicle is still on the highway awaiting towing.
Id. at 92 (citing United States v. Prescott, 599 F.2d 103, 105 (5th Cir.1979)).
¶ 11. The exercise of police discretion does not violate the Fourth Amendment “so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.” Colorado v. Bertine, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). “A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself.” Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Allowing an officer to exercise his judgment does not violate the Fourth Amendment. Id. “If there is no showing of bad faith or for the sole purpose of investigation, evidence discovered during an inventory search is admissible.” United States v. Gallo, 927 F.2d 815, 819 (5th Cir.1991).
¶ 12. Most importantly, the Fifth Circuit Court of Appeals has stated that there is no requirement that the prosecution submit evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient. Como, 53 F.3d at 92 (citing United States v. Skillern, 947 F.2d 1268, 1275 (5th Cir.1991)).
¶ 13. After a thorough review of the applicable law and the facts here, we find that the inventory search of O’Connell’s vehicle did not violate the Fourth Amendment of the United States Constitution or the provisions of Article 3, Section 23 of the Mississippi Constitution. Deputy McMahan testified that it is the Harrison County Sheriffs Department’s standard procedure to inventory the contents of a vehicle that is about to be impounded. According to Deputy McMahan, this policy is used as a means of safeguarding the vehicle and its contents and to protect law enforcement officers from subsequent claims of theft or damage. That was the sole reason why Deputy McMahan performed the inventory search of O’Connell’s vehicle while waiting for the tow truck to arrive. The record is void of any evidence of bad faith on the part of Deputy McMa-han in conducting the search or of any evidence that the search was a “ruse for rummaging in order to discover incriminating evidence.” Thus, we affirm O’Con-nell’s conviction and sentence.
*310 ¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCE OF SIXTY YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.